IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------ :
THOMAS J. WOZNIAK, et al.,            : CASE NO.  1:05 CV 2259
                                       :
                            Plaintiffs, :
                                       : MEMORANDUM OF OPINION AND
            -vs-                       : ORDER
                                       :
                                       :
JOHN E. CORRIGAN, et al.,              :
                                       :
                          Defendants. :
------------------------------------------------------ :


UNITED STATES DISTRICT JUDGE LESLEY WELLS


        Before the Court are several dispositive motions in response to the myriad claims

leveled against six named defendants in the plaintiffs' 30 September 2005 amended

complaint.  (Docket No. 3, Amended Complaint, pp. 1-70, hereinafter "Complaint").

Briefly, this suit involves claims brought by Thomas J. Wozniak ("Mr. Wozniak"), an

attorney licensed in the State of Ohio, (Docket No. 6), and George Linte through Next

Friend E.C. Rios, against each of the parties formerly engaged in a 1999 will contest in

Cuyahoga County Probate Court.  (Complaint pp. 1-63).  The papers before the Court

clearly indicate this matter has been ricocheting through the various halls of state court

since 8 November 1999, when Mr. Wozniak represented Mr. Linte, in a will contest

before defendant, Probate Court Judge John E. Corrigan ("Judge Corrigan"), over the

estate of Mr. Linte's deceased wife, Mary Monogudis.  (In re Mary Monogudis,

Cuyahoga County Probate Court No. 99 EST 27258, hereinafter "Probate Case").

Defendant Edward Graham ("Mr. Graham) was the executor of the Monogudis Estate

and defendant John J. Curran (Mr. Curran") represented Mr. Graham in the Probate

Case.  Defendants D.C. Miclaw ("Mr. Miclaw") and Thomas C. Simiele ("Mr. Simiele")

represented Mr. Linte in the Probate Case after Mr. Linte terminated his attorney-client

relationship with Mr. Wozniak on 10 August 2001.  Mr. Wozniak's complaint, though

now styled as a Racketeering Influenced and Corrupt Organizations ("RICO") claim,

pursuant to 18 U.S.C. § 1962 (c ) & (d), is entirely predicated on the transactions and

occurrences of the 1999 Probate Case.[1]

In response to Mr. Wozniak's 30 September 2005 Complaint, Mr. Graham has

submitted a motion to dismiss and for sanctions (Docket No. 8) and has also submitted

a separate motion to deem the plaintiff a vexatious litigator.  (Docket No. 20).[2]  Judge

Corrigan has also responded with a motion to dismiss.  (Docket No. 12).  Mr. Curran

has filed a motion to dismiss, for sanctions, and to deem Mr. Wozniak a vexatious

litigator.  (Docket No. 18).

---

[1]While Mr. Wozniak's seventy-page, single spaced complaint is not a model of clarity for a practicing attorney, its recitation of the facts, nevertheless, sits four-square on the corners of the prior Probate Case proceedings.  Mr. Wozniak's complaint before the Court relies upon the same parties, and draws its legal substance from the very same transactions and occurrences as the Probate Case.

[2]Mr. Graham has also filed a motion to strike Mr. Wozniak's 29 March 2006 "Notice: Option to Dismiss" ("Notice") and accompanying appendix. (Docket Nos. 22, 23, 24).  As Mr. Wozniak's notice filing is improper the Court grants Mr. Graham's motion to strike, removing the entry from the record. While Mr. Graham does not make the argument, it is nevertheless apparent that Mr. Wozniak's filed Notice should be stricken from the record because is not a "pleading" as defined in Federal Rule of Civil Procedure 7(a), is not a "motion" as defined in Federal Rule of Civil Procedure 7(b), and is not attached as an exhibit to a pleading, a motion, or a response brief. The Court concludes the Federal Rules of Civil Procedure do not provide for the filing of such a document. The Notice of Option to Dismiss will therefore be stricken from the record along with its appendix. (Docket Nos. 22, 23).  See also Local Rule Appendix B at No. 9; Demmler v. Bank One NA,  2006 WL 640499 (S. D. Ohio 9 March 2006).

Mr. Wozniak responded to Mr. Graham's motion to dismiss on 9 March 2006 (Docket No. 19), and filed an opposition to Mr. Curran's motion on 10 April 2006. (Docket No. 26).  Mr. Curran filed a reply to Mr. Wozniak on 20 April 2006.  On 6 March 2006, Mr. Wozniak filed an extensive "Motion to Strike" along with supplemental exhibits, in which he directly addressed the arguments put forth in Judge Corrigan's Motion to Dismiss. (Docket Nos. 15, 16).  Upon review, the Court shall construe Mr. Wozniak's Motion to Strike as a responsive pleading to Judge Corrigan's Motion to Dismiss.[3]  As such, Mr. Wozniak has submitted responsive pleadings to each dispositive motion before the Court.  (Docket Nos. 15, 16, 19, 26).  The pleadings are ripe for review.

For the reasons discussed below, the Court dismisses this matter in its entirety and grants the defendants' motions for sanctions by enjoining the plaintiffs from further filings in this matter without first obtaining leave from the Court.

I.    **BACKGROUND**

This suit represents a reiteration of previous claims brought by Mr. Wozniak on behalf of himself and Mr. Linte stemming from their dissatisfaction with the outcome of a will contest involving the probate of Mary Monogudis's estate (herinafter "Estate"),

---

[3]Accordingly, as the Court construes Mr. Wozniak's motion to strike, with its accompanying exhibits, as a responsive pleading to Judge Corrigan's motion to dismiss, the plaintiffs' 6 April 2006 "motion for leave of 30 days to respond to motion to dismiss" is denied as moot.  (Docket No. 25).  As a material matter, Mr. Wozniak's 6 April 2006 additional request for time was merely a copy of his previous, 6 March 2006 request which the Court granted.  (Docket No. 17, Non Document Order filed 31 March 2006).  Mr. Wozniak submitted no explanation for requiring the additional extension.  Finally, after granting Mr. Wozniak a 30 day extension, until 6 April 2006, on his motion to respond to defendant Corrigan's motion to dismiss (Docket No. 17), the plaintiffs submitted an untimely partial responsive brief on 9 May 2006, along with a motion for further extension to respond.  (Docket Nos. 29, 30).  The Court will not consider the untimely brief and renders moot the plaintiffs' 9 May 2006 the motion for extension.

Probate Case No. 99 EST 27258. ("Probate Case").  In that matter, Ms. Monogudis's

will was admitted to probate on 8 November 1999.  (Docket No. 18, Appendix A).  On

8 September 2000, the probate court held a hearing on Mr. Linte's motion to vacate his

election to take under his deceased wife's will, which left him nothing.  Id.  Mr. Wozniak

made his initial appearance on behalf of Mr. Linte on 18 January 2001 and

subsequently filed a number of motions, which the probate court considered at a

hearing on 23 April 2001, and overruled on 26 April 2001.[4]  On 29 May 2001, Mr.

Wozniak appealed the probate court's determinations to the Court of Appeals for the

Eighth District, Case No. 79726. ("First Appeal").

On 27 June 2001, a Settlement Agreement ("Agreement") was signed by Messrs.

Linte, Graham, Curran, and Wozniak in an effort to place Mr. Linte's claims against the

Estate in repose.  (Docket No. 8, Exhibit A).  The Agreement provided for the

Monogudis Estate to deposit $60,000 into an interest-bearing escrow account payable

to Mr. Linte and Mr. Wozniak in full settlement of all claims by Mr. Linte against the

Estate.  The Agreement was contingent upon Mr. Linte and Mr. Wozniak dismissing,

with prejudice, all pending claims and appeals against the Estate.  ("Probate Case"

records).  Mr. Wozniak was also to produce evidence of his current admission in good

standing with the Supreme Court of Ohio as an attorney licensed to practice in the state.

(Docket No. 8, Exh. A; Docket No. 18; Docket No. 3, ¶ 258).  Finally, the Agreement

---

[4]The probate court heard evidence on and disposed of Mr. Linte's motions including: [1] Motion to vacate election to take under will; [2] Motion to order investigation; [3] Motion to stay proceedings; [4] Motion for taxation of costs; [5] Motion for summary judgment; [6] Motion to remove executor; and [6] objections. (Docket No. 18, Appendix A).

4

was conditioned on the approval of the probate court presiding over the Estate.  (Docket No. 8, Exh. A).

The Agreement was filed with the probate court, which, on 10 July 2001, returned a Judgment Entry memorializing the terms of the Agreement.  (Docket No. 18, Attachment 1; Probate Case records).  In accord with the Agreement, Judge Corrigan granted Mr. Linte's "motion to vacate election to take under the will" and directed Mr. Wozniak to dismiss a separately filed action against the Estate in Cuyahoga County Common Pleas Court, Case No. 436258.  (Docket No. 3, ¶ 250).  That matter, filed on 19 April 2001 by Mr. Wozniak, acting for Mr. Linte, against Mr. Graham as executor of the Estate set forth claims identical to those forwarded in the Probate Case.[5]

According to the dockets and papers before the Court, post-Agreement omissions and commissions by Mr. Wozniak and Mr. Linte eventually led to the probate court's abrogation of the Agreement on 24 September 2001.  First, on 3 July 2001 just prior to the filing of the parties' Agreement, Mr. Linte, represented by Mr. Wozniak, filed another appeal to the Eighth District, Case No. 79904.  ("Second Appeal").  Second, on 10 August 2001, Mr. Wozniak, on behalf of Mr. Linte, filed an appeal to the Eighth District of the probate court's 10 July 2001, Judgment Entry ordered in response to the parties' Agreement, Case No. 80077 ("Third Appeal").  Mr. Wozniak neither voluntarily dismissed these appeals nor filed appellate briefs in either appeal.  Nor, according to the uncontested papers before the Court, did Mr. Wozniak provide the probate court proof of his good standing to practice law in Ohio.  (Docket No. 18).  The Agreement's

---

[5]Mr. Linte's complaint in Case No. 436258 was dismissed voluntarily on 17 October 2001, after Mr. Linte removed Mr. Wozniak from further representation.  (Docket No. 18, Exhibit 2).

express conditions were not satisfied, and, on 10 August 2001, Mr. Linte terminated his attorney-client relationship with Mr. Wozniak.  (Docket No. 3, ¶ 281; Docket No. 8, p. 2). Accordingly, upon motion from Mr. Curran, the probate court vacated the Agreement by way of a further Judgment Entry on 24 September 2001.  (Docket No. 18, Attachment 1).

Subsequently, on 4 October 2001, Mr. Wozniak filed an appeal of the probate court's 24 September 2001 Judgment Entry with the Eighth District, Case No. 80335 ("Fourth Appeal").  The Eighth District consolidated the three appeals, Cases No. 79726, 79904 & 80335, on 29 January 2002, ultimately dismissing the consolidated case on 19 February 2002 for failure on the part of Mr. Wozniak to submit any briefing in the matter.

On 11 August 2003, a little more than two years from the time Mr. Linte dismissed Mr. Wozniak's representation, Mr. Wozniak brought a complaint in Cuyahoga County, Case No. 507808, against Messrs. Curran and Graham, the Estate, and Fifth Third Bank, as Trustee for the Testamentary Trust of the Estate, setting forth causes of action for breach of contract, breach of fiduciary duty, bad faith, and tortious interference with the attorney-client relationship.  (Docket No. 8, Exh. A; Docket No. 18, Exhibit 3).  After the completion of discovery, all of the defendants filed dispositive motions.  Having failed to file any responsive briefs, Mr. Wozniak, instead, filed a motion to voluntarily dismiss the action on 8 July 2004.  (Docket No. 18, Exhibit 4).

Four days later, on 12 July 2004, Mr. Wozniak, appearing pro se, re-filed the same claims against the same defendants, initially joining Mr. Linte as a defendant, in Cuyahoga County Case No. 535704.  (Docket No. 18, Exhibit 5).  Again, all defendants

6

moved for summary judgment, to which, this time, Mr. Wozniak replied.  On 6 May 2005 the court granted summary judgment in favor of all defendants.  Mr. Wozniak sought an appeal of the court's determination from the Eighth Appellate District on 8 July 2005, which the appellate court dismissed <u>sua sponte</u> as untimely.  (Docket No. 18, Exhibit 7).  On 29 August 2005, Mr. Wozniak sought an appeal from the Supreme Court of Ohio, Case No. CA-05-086680.  After the matter was fully briefed, on 14 December 2005, the Ohio Supreme Court declined to accept jurisdiction and, without explanation, denied defendant Fifth-Third Bank's motion for sanctions for frivolous action.  (Docket No. 18, Exhibits 9, 10).

Mr. Wozniak filed his complaint in this matter on 26 September 2005, submitting an amended complaint on 30 September 2005.  (Dockets No. 1, 3).  In this matter, Mr. Wozniak levels several claims, all grounded in the transactions and occurrences of the probate court's actions pursuant to Mr. Linte's claims against the Estate, the abdicated Agreement, and the termination of Mr. Wozniak's attorney-client relationship with Mr. Linte on 10 August 2001.  Mr. Wozniak specifically recognizes the genesis of the complaint "on or about 16 August 1996" (Complaint ¶ 7) and alleges no pattern of malfeasance beyond the probate court's 24 September 2001 nullification of the parties' Agreement.

Given that time period, Mr. Wozniak alleges in his first and second claims that defendants Corrigan, Graham, Curran, Miclaw and Simiele engaged in a corrupt enterprise in violation of RICO, 18 U.S.C. §§ 1962(c) & (d), when they colluded to deny both his then-client, Mr. Linte, a piece of the Estate, and Mr. Wozniak his percentage fee from Mr. Linte's alleged settlement with the Estate.  (¶¶ 330-39).  Third, Mr.

7

Wozniak brings a claim of threat and intimidation against Judge Corrigan, pursuant to the Hobbes Act, 18 U.S.C. § 1951(b)(2), arising from an alleged incident on 2 July 2001 in the chambers of Judge Corrigan. (¶¶ 340-44). Mr. Wozniak's fourth claim is simply for "judicial fraud," against defendants Curran, Graham and Corrigan. (¶¶ 345-46). Fifth, Mr. Wozniak alleges a pattern of corrupt activity in violation of O.R.C. § 2923.31, the Ohio RICO Act. (¶¶ 347-52). Sixth, Mr. Wozniak alleges breach of contract, failure to exercise good faith, and breach of fiduciary duty against defendants Graham and Curran. (¶¶ 353-55). Seventh, Mr. Wozniak alleges breach of fiduciary duty, failure to act in good faith and breach of contract against defendants Miclaw and Simiele. (¶¶ 356-58). Finally, Mr. Wozniak pleads for relief pursuant to 42 U.S.C. § 1983, and for a range of equitable relief pursuant to 18 U.S.C. § 1964(a), namely "that the fraudulently derived judgments of Judge Corrigan be adjudicated null and void as rendered in the case of Mary Monogudis." (Complaint, pp. 69-70).

## II. LAW & ANALYSIS

### A. Lack of Subject Matter Jurisdiction.

It is well-established that federal courts lack subject matter jurisdiction to hear and resolve probate matters. Markham v. Allen, 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946). Not all claims that relate to probate, however, are excluded from the federal courts' jurisdiction. The Markham Court explicitly stated:

> Federal courts of equity have jurisdiction to entertain suits in favor of creditors, legatees and heirs and other claimants against a decedent's estate to establish their claims so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court.

Id. (internal quotations and citations omitted).

8

Relying on Markham, 326 U.S., at 494, the Court determines the probate exception bars federal jurisdiction in this instance, where such jurisdiction would "interfere" with the probate proceedings because success on Mr. Wozniak's claim necessitates a declaration that the distribution of the Estate was invalid.   As the United States Supreme Court recently recognized in Marshall v Marshall, --- S.Ct. ----, 2006 WL 1131904 (1 May 2006),

> [t]his Court therefore comprehends Markham's "interference" language as essentially a reiteration of the general principle that, when one court is exercising in rem jurisdiction over a res, a second court will not assume in rem jurisdiction over the same res. Thus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from disposing of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

Marshall v Marshall,  Pp. ---- - ----11-15., *3 (citations omitted).

Unlike the petitioner in Marshall, Vickie Lynn Marshall, a.k.a. Anna Nicole Smith, Mr. Wozniak's claims and those claims he makes through Mr. Linte's Next Friend Mr. Rios, inextricably involve the administration of the Estate and the probate of Mary Monogudis's will; in short, Mr Wozniak and Mr. Linte seek to reach the res of the Estate.[6]  Marshall, at *4.  Recasting the language of the suit as a RICO claim does not alter the landscape of the case which implores the Court to interfere with a state probate proceeding.

---

[6]As the Court observed in Marshall, "Vickie's claim does not involve the administration of an estate, the probate of a will, or any other purely probate matter. Provoked by [petitioner's husband's son's] claim in the bankruptcy proceedings, Vickie's claim alleges the widely recognized tort of interference with a gift or inheritance. She seeks an in personam judgment against [her husband's son], not the probate or annulment of a will.  Cf. Sutton v. English, 246 U.S. 199, 208, 38 S.Ct. 254, 62 L.Ed. 664.  Nor does she seek to reach a res in a state court's custody."  Marshall at *4.

Moreover, the United States Court of Appeals for the Sixth Circuit repeatedly has recognized the federal courts lack subject matter jurisdiction over cases where the plaintiff, as in this instance, alleges a breach of fiduciary duties against the executor of an estate.  See Bedo v. McGuire, 767 F.2d 305 (6th Cir.1985); Starr v. Rupp, 421 F.2d 999 (6th Cir.1970).[7]  More precisely, the plaintiffs admit Mr. Graham's fiduciary behavior as Executor is at the base of their complaint.  (Complaint ¶ 42).

In Starr, a beneficiary to the decedent's will initially brought suit in the district court against the executor for misadministration of the estate. Id. at 1001. The district court dismissed the action for lack of subject matter jurisdiction, resting its determination on a refusal to disturb the ongoing proceedings in an Ohio probate court. Id.

The beneficiary thereafter filed a petition in the Ohio probate court and filed multiple exceptions to the executor's filings. Id. at 1001-02.  The probate court denied the petition in full and overruled the exceptions. Id. at 1003.  The beneficiary appealed, and the appellate court affirmed. Id.  The beneficiary again filed suit in the district court alleging a breach of the executor's duties. Id.  The district court denied the claim on res judicata grounds. Id.  On appeal, the Sixth Circuit reasoned that the district court lacked subject matter jurisdiction to reach the issue of res judicata. Id.  The court stated:

> Under Ohio law, jurisdiction of this type of action involving an alleged breach of fiduciary duties is lodged in the Probate Court in a quasi in rem proceeding for accounting and surcharging the executor with the losses to the estate resulting therefrom. The cause of action relating to other defendants in this case is based on the fact that Rupp allegedly breached his fiduciary duties. In order to fix their liability, it would be necessary first

---

[7]Ohio Revised Code section 2101.24(a)(1)(c) vests exclusive jurisdiction with the probate court "[t]o direct and control the conduct and settle the accounts of executors and administrators and order the distribution of estates."Ohio Rev.Code. Ann § 2101.24 (2005).

> to determine whether Rupp mishandled the estate, which is a question for
> the Probate Court and not for a Federal Court to decide.

Starr, 412 F.2d at 1007.

Similar to the beneficiary in Starr, Mr. Wozniak, and putatively, Mr. Linte, now invoke the Court's jurisdiction and re-characterize their claim as one of fraud and conspiracy, pursuant to RICO and the Ohio analog to RICO.  A review of Mr. Wozniak's past pleadings against the same defendants for breach of fiduciary duty, bad faith, breach of contract and interference with the attorney-client relationship, indicates his current claims, regardless of how phrased, are consonant with the prior Ohio probate litigation which form the predicate for his 30 September 2006 complaint.  As in Starr, in order for this Court to ascertain liability necessitates it first determine whether Mr. Graham mishandled the Estate; precedent directs this is a matter for the proate court and not the federal court.

Indeed, Starr firmly establishes that the Court lacks subject matter jurisdiction over such a claim:

> In order to grant the relief prayed for by the plaintiffs, it would be
> necessary for this Court to impose personal liability on Rupp for the losses
> to the decedent's estate, resulting from the alleged breach of his fiduciary
> duties and his failure to account for assets of the estate coming into his
> possession as executor.

Starr, 421 F.2d 1003.  Federal jurisdiction does not extend to claims requiring (1) interference with probate proceedings, (2) assumption of general jurisdiction over probate, or (3) assumption of control over property in the custody of a state court. Evans v. Pearson Enterprises, Inc., 434, F.3d 839, 847 (6th Cir.2006) (citing Markham, 326 U.S. at 494).

11

As in <u>Starr</u>, Wozniak's claims arise from defendants' alleged behavior with regard to the <u>in rem</u> probate proceedings:  Mr. Graham's conduct while Executor of the Estate, Mr. Curran's conduct while representing the Estate and Messrs. Miclaw's and Simiele's representation of Mr. Wozniak's former client and alleged beneficiary of the Estate, and Judge Corrigan's conduct adjudicating the matter. (Complaint, ¶¶ 14-329).  While the plaintiffs attempt to construe their action as pursuing fraud, tort, and contract claims against "the Judge and his co-conspirators" arising from their systematic efforts to fraudulently undermine the  "judicial due process" (Complaint, ¶¶ 27, 42 - 47), a review of the Complaint reveals, at base, an <u>in rem</u> probate dispute.  The Complaint stems from Mr. Grahams' actions as Executor of the Estate's assets and his efforts to represent the Estate in the face of Mr. Linte's legal efforts to circumvent an antenuptial agreement he signed prior to his marriage to Mary Monogudis.  (Compliant ¶¶ 42, 48-60).  Mr. Linte challenged his share of the distribution of the Estate.  Mr. Linte and Mr. Wozniak reached an Agreement to settle the matter for $60,000, payable to an escrow account on condition the plaintiffs dismiss all pending legal claims against the Estate.  In contravention of the terms of the Agreement Mr. Wozniak admits continuing to file appeals in the matter, leading Judge Corrigan to dismiss the Agreement as null and void.  Accordingly, the plaintiffs' claims against the defendants arise directly from this distribution of the Estate.  As the subject matter of this case is so intertwined with the management of the Estate, proper jurisdiction lies with the probate court, which is better suited to hear such matters.

**B.	Lack of Jurisdiction Pursuant to Rooker-Feldman**

Even assuming, <u>arguendo</u>, the plaintiffs' claims survive the probate exception to subject matter jurisdiction as <u>in personam</u> claims, the Court lacks jurisdiction pursuant to the Rooker-Feldman doctrine.  The Rooker-Feldman doctrine, "a combination of the abstention and res judicata doctrines, stands for the proposition that a federal district court may not hear an appeal of a case already litigated in state court. A party raising a federal question must appeal a state court decision through the state system and then directly to the Supreme Court of the United States."  <u>United States v. Owens</u>, 54 F.3d 271, 274 (6th Cir.1995) (citing <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).  Only the United States Supreme Court has jurisdiction to correct state court judgments. <u>Feldman</u>, 460 U.S. at 482.

The Rooker-Feldman doctrine proceeds on two fronts. "First, in order for the Rooker-Feldman doctrine to apply to a claim presented in federal district court, the issue before the Court must be [inextricably intertwined] with the claim asserted in the state court proceeding." <u>Catz v. Chalker</u>, 142 F.3d 279, 293 (6th Cir.1998) (internal citation omitted).  "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." <u>Id.</u> (internal citation omitted).

13

Second, the Rooker-Feldman doctrine precludes federal court jurisdiction where the claim is "a specific grievance that the law was invalidly – even unconstitutionally – applied in the plaintiff's particular case." Id. (internal citation omitted).[8]

A fair reading of the complaint reveals the plaintiffs' federal case is essentially an appeal of the state court judgment, as it merely raises specific issues regarding decisions of the judge sitting in the probate action wherein the plaintiffs are the recipients of adverse rulings.  (Complaint ¶¶ 20, 81 -180).  That the plaintiffs' claims are "inextricably intertwined" with the state court proceeding is evident from the fact that there is simply no way for this or any other court to grant relief without disturbing the judgments entered by the probate court.  Each of the myriad and vague claims set forth by the plaintiffs rests on the apparent premise that the probate court determination of Mr. Linte's status vis-a-vis the Estate was invalid.  Without a holding from the United States Supreme Court that the probate court was wrong on that point, there is no jurisdictional reach for this Court to even entertain the plaintiffs' claims.  Thus, this Court lacks jurisdiction over any challenge the plaintiffs are making to the legal proceedings held in the Cuyahoga County Probate Court.

While federal review of state court judgments is strictly limited, nevertheless, "[a] federal court 'may entertain a collateral attack on a state court judgment which is alleged to have been procured through fraud, deception, accident, or mistake.' " In re Sun Valley Foods, 801 F.2d 186, 189 (6th Cir.1986) (quoting Resolute Insurance Co. v.

---

[8]Exceptions to this doctrine of abstention exist when plaintiffs attack the constitutionality of the statute or authority for the state court proceedings themselves, see Howard v. Whitbeck, 382 F.3d 633, 639 (6th Cir.2004), or raise "a general challenge to the constitutionality of the state law applied in the state action," Catz, 142 F.3d at 293; see also Patmon v. Mich. Sup.Ct., 224 F.3d 504, 509-10 (6th Cir.2000), but neither of these exceptions applies here.

State of North Carolina, 397 F.2d 586, 589 (4th Cir.1968)).  Accordingly, the
Rooker-Feldman doctrine does not preclude federal courts from reviewing claims
alleging that the state court judgment was procured by fraud, deception, accident or
mistake.

In this case, the Court finds plaintiffs are merely trying to attack the decisions of
the Cuyahoga County Probate Court by cloaking their claims in the language of the
federal and state RICO statutes and related state law claims.  Judge Corrigan granted
the parties' stipulated Settlement Agreement, approving Mr. Graham distribute to Mr.
Linte $60,000 from the Estate, dismissing Mr. Linte's motion to vacate election to take
under the will, and predicating payment to the escrow account upon Mr. Linte and Mr.
Wozniak dismissing any and all pending litigation with prejudice.  Following that court
order, and as a result of Mr. Wozniak's serial appeals of the matter, Judge Corrigan
granted Mr. Curran's motion to vacate his prior order granting the Agreement.
Accordingly, Mr. Linte did not receive the distribution from the Estate he expected from
the Agreement and Mr. Wozniak did not receive his fee percentage.

While there appear a plethora of allegations in Mr. Wozniak's seventy page
complaint, the basic substance of the matter before the Court is the allegation that
Judge Corrigan's decisions, along with the intentional combination of the defendant
attorneys in the probate case, worked to "fraudulently" deprive Mr. Linte of his just
distribution of the Estate and Mr. Wozniak of his just fee.  Mr. Wozniak appealed Judge
Corrigan's decisions but faced dismissal when he failed to file any briefs whatsoever in
the matter.  (Case Nos. 79726, 79904 & 80335).  Mr. Wozniak also brought two
complaints in state court (Case Nos. 507808, 535704), in which he merely expanded on

15

his previous claims of fraudulent mismanagement.  Mr. Wozniak voluntarily dismissed the first case after failing to respond to defendants' motions for summary judgment, only to re-file the same claims four days later under Case No. 535704.  After summary dismissal on the merits, Mr. Wozniak appealed Case No. 535704, which the Eighth Appellate District Court dismissed as untimely.  Rebuffing Mr. Wozniak's request for review, the Ohio Supreme Court declined jurisdiction.

Seemingly unsatisfied, the plaintiffs have now brought their already reviewed complaint to this Court.  In effect, plaintiffs are asking this Court to evaluate the merits of the state court's decisions.  As should be apparent, this is the essence of appellate review and is the exclusive province of the United States Supreme Court.  In these circumstances, the Court is bound under the Rooker-Feldman doctrine to find it lacks subject matter jurisdiction to consider plaintiffs' attack upon the state court judgment in this matter.

As the Sixth Circuit noted in Sun Valley, there is an exception to the Rooker-Feldman doctrine in cases where the state court judgment is alleged to have been procured through fraud, deception, accident, or mistake. Sun Valley, 801 F.2d at 189. In this case, however, plaintiffs have presented no evidence that the decisions of the state court complained of resulted from any of these circumstances.  Rather, after a review of plaintiffs' pleadings and submissions, it is apparent they are seeking relief based upon various alleged procedural problems and factual determinations of the state court they claim were erroneous.  As the Court has already indicated, such questions are best left to the Ohio Court of Appeals, the Ohio Supreme Court, and the United States Supreme Court to decide as this Court lacks jurisdiction.

16

### C.    Statute of Limitations Exceeded.

Even assuming, arguendo, the plaintiffs' claims survive the Rooker-Feldman exception as a state court judgment alleged to have been procured through fraud, deception, accident, or mistake, the statute of limitations bars the Court from hearing the plaintiffs' RICO and Section 1983 claims.  Rotella v. Wood, 528 U.S. 549, 553 (2000).

A civil RICO action is subject to a four-year statute of limitations. Rotella v. Wood, 120 S.Ct. at 559; Bygrave v. Van Reken, 238 F.3d 419, *3 (Table) (6th Cir. 2000). RICO imposes liability on those who, among other things, engage in a "pattern of racketeering activity," which requires a showing of at least two predicate acts occurring within a ten-year period.  From the pleadings, the plaintiffs appear to argue the injury occurred in August 1996, with Mr. Linte's signing of the antenuptial agreement in Mr. Graham's office.  (Complaint ¶¶ 42, 55).  The first predicate act allegedly occurred on 8 November 1999, when the Estate was admitted to probate and, according to the complaint "the scheme to cover the fraudulently derived antenuptial agreement and the circumstances surrounding the death of M. Monogudis is initiated."  (Complaint ¶ 69). The second predicate act allegedly occurred no later than April 2001, pursuant to the 23 April 2001 hearings and associated rulings. (Complaint ¶¶ 193-228).   Accordingly, any federal civil RICO claim, or ancillary state RICO claim, the plaintiffs might have acquired was time-barred long before they filed their complaint on 26 September 2005.[9]

---

[9]The fact the plaintiffs allege further predicate acts after April 2001 and up until 24 September 2001 does not alter the analysis. In Klehr v. A.O. Smith Corp ., 521 U.S. 179 (1997), the United States Supreme Court rejected the so-called "last predicate act rule," under which RICO's four-year limitations period begins to run anew every time another predicate act is committed.  As a result, even if the Court assumed, arguendo, that party defendants' numerous actions vis-a-vis the plaintiffs each qualified as a predicate act, those actions did not extend the beginning of the clock running on the expiration of the

Likewise, the plaintiffs' construed claim under 42 U.S.C. § 1983, is barred from consideration pursuant to the applicable two-year statute of limitations.  As Congress did not specifically adopt a statute of limitations governing Section 1983 actions, federal courts must borrow the statute of limitations governing personal injury in the state in which the Section 1983 claim is brought.  Wolfe v. Perry et al., 2005 U.S. App. LEXIS 12677, at *15-16 (6th Cir. June 27, 2005).  In Ohio, the appropriate statute of limitations for Section 1983 civil rights actions is two years under O.R.C. § 2305.10, Ohio's personal injury statute.  Banks v. City of Whitehall, 344 F. 3d 550, 553 (2003).  Under O.R.C. § 2305.10, the statute of limitations on a cause of action begins to run when a party discovers or should discover the existence of the cause of action.

The pleadings clearly indicate the plaintiffs were aware of their alleged injuries during the course of the 2001 probate case.  Accordingly, the statute of limitations on any Section 1983 claim began to run in 2001 when the plaintiffs knew or should have known of the alleged injury which forms the basis for their claims and had long since passed by the time of their 26 September 2005 pleading before the Court.[10]

---

statute of limitations beyond April 2001.

[10]The plaintiffs assert a myriad of state law contract and tort claims against the defendants. Subject matter jurisdiction is necessary for the exercise of federal judicial power. Richmond v. International Business Machines Corporation, 919 F.Supp. 107 (E.D.N.Y.1996) (citing Fed.R.Civ.P. 12(b)(1)). The plaintiff has the burden of demonstrating subject matter jurisdiction. RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1134 (6th Cir.1996).  Absent any other basis for jurisdiction, federal courts do not have jurisdiction over actions regarding "duties that are analogous to those traditionally imposed by state tort law." Lewellen v. Metropolitan Govt., et al., 34 F.3d 345, 351 (6th Cir.1994) (citing Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (citations omitted)). Without more, federal courts are not an avenue for redress of tort claims. See Mertik v. Blalock, 983 F.2d 1353, 1362 (6th Cir.1993).  Accordingly, the Court declines jurisdiction over state law claims.  Long v. Bando Manufacturing of America, 201 F.3d 754, 759 (6th Cir.2000).   To the extent the plaintiffs have asserted possible state law claims, they do not constitute "federal questions" invoking jurisdiction in this Court.  The Court declines to exercise supplemental jurisdiction over the plaintiffs' state law claims.  See Weeks v. Portage County Executive Offices, 235 F.3d 275, 279-80 (6th Cir.2000).

**D.      Imposition of Sanctions.**

Defendants Graham, Curran and Corrigan move the Court to sanction the

plaintiffs for vexatious filing by enjoining any further frivolous filings against the named

defendants in this matter.  Plaintiffs respond by observing that "[l]egitimate pursuit on

[sic] one's rights even against the judiciary, are never frivolous."  (Docket No. 26, p 16).

This Circuit recognizes the Court "has the authority to issue an injunctive order to

prevent prolific and vexatious litigants from filing pleadings without first meeting

pre-filing restrictions."  Stewart v. Fleet Financial, 229 F.3d 1154, 2000 WL 1176881

(6th Cir., August 10, 2000) (citing Feathers v. Chevron U.S.A., 141 F.3d 264, 269 (6th

Cir.1998); Filipas v. Lemons, 835 F.2d 1145, 1146 (6 th Cir.1987).  The Feathers court

recognized there is "nothing unusual about imposing prefiling restrictions in matters with

a history of repetitive or vexatious litigation."  Feathers at 269.  The Sixth Circuit Court

agreed with the Ninth Circuit that "[t]he general pattern of litigation in a particular case

may be vexatious enough to warrant an injunction in anticipation of future attempts to

relitigate old claims."  Id., citing Wood v. Santa Barbara Chamber of Commerce, Inc.,

705 F.2d 1515, 1524 (9th Cir.1983).

Without doubt, a litigant who files a case without merit wastes the resources of

the court and the named defendants.  See e.g., Martin v. District of Columbia Court of

Appeals, 506 U.S. 1, 3, 113 S.Ct. 397, 121 L.Ed.2d 305 (1992) (noting that every

frivolous paper filed causes some drain on the court's limited resources); Support

Systems Int'l, Inc. v. Mack, 45 F.3d 185 (7th Cir.1995) (noting that litigants who

repeatedly file frivolous papers clog court proceedings and burden judges and their staff

to the detriment of parties having meritorious claims).  As the papers before the Court

19

indicate, the plaintiffs, or Mr. Wozniak acting as a single plaintiff, have filed eight separate complaints and six separate appeals, all predicated on the initial 21 April 2000 motion to vacate Mr. Linte's election to take under Mary Monogudis's will. In three of the appeals, the plaintiffs failed to even file briefs, while in one complaint, Case No. 507808, Mr. Wozniak waited until defendants filed dispositive motions, then he filed for voluntary dismissal, only to subsequently re-file the same claims against the same defendants four days later in Case No. 535704.

The same transactions and occurrences appear before the Court today in the plaintiffs' complaint, clothed now in the verbiage of a federal civil RICO claim.  At this juncture, the Court finds the plaintiffs' actions rise to the level of prolific and vexatious litigation.  See <u>Feathers</u> at 269 (issuing an injunction to "stanch the ongoing flow of meritless and repetitive" cases); <u>Flilipas</u> at 1146 (upholding district court's order that plaintiffs must have leave of court before filing any further complaints where plaintiffs had filed "many" cases concerning the same automobile accident); <u>Sassower v. American Bar Association</u>, 33 F.3d 733 (7th Cir.1994) (honoring injunction from another district and imposing additional pre-filing restraints where plaintiff, a disbarred lawyer, filed repetitive cases for over a ten year period against numerous defendants including the alleged wrongdoers, the judges who decided the cases, and the legal publishers that printed the decisions).  Accordingly, the plaintiffs are hereby enjoined from any further attempts to sue in this Court, these defendants or any other person or entity, on any theory, based upon the factual situation alleged in the 2001 probate case.

On the basis of the foregoing, the Court orders the plaintiffs to seek leave from this Court prior to filing any new action relating to the same underlying facts.

20

### III.    CONCLUSION

For the reasons stated above, the Court dismisses the plaintiffs' complaint in its entirety with prejudice.  Accordingly, the defendant Edward Graham's Motion to Dismiss and Motion for Sanctions (Docket No. 8); defendant John E. Corrigan's Motion to Dismiss (Docket No. 12); defendant John J. Curran's Motion to Dismiss and Motion for Sanctions (Docket No. 18); defendant Edward Graham's Motion to Deem Plaintiff a Vexatious Litigator (Docket No. 20); and defendant Edward Graham's Motion to Strike Plaintiff's "Notice: Option to Dismiss" (Docket No. 24) are granted.  Further, the plaintiffs' "Motion for Leave of 30 Days to Respond to Motion to Dismiss" (Docket No. 25) and "Motion for Extension of Time Until 5/20/2006 to Complete Response Brief" (Docket No. 30) are denied as moot.  Finally, the plaintiffs must seek leave of this Court to file, in this Court, any new actions relating to the same underlying facts.


IT IS SO ORDERED.


　　　　　　　/s/Lesley Wells　　　　　　　　
UNITED STATES DISTRICT JUDGE